1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRIS J. LYNCH, | ) | 1:04-CV-05563 AWI GSA HC |
| | ) | |
| Petitioner, | ) | |
| | ) | **FINDINGS AND RECOMMENDATION** |
| v. | ) | **REGARDING PETITION FOR WRIT OF** |
| | ) | **HABEAS CORPUS** |
| | ) | |
| JAMES A. YATES, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on July 12, 1999, of one count of rape by force or fear (Cal. Penal Code § 261(a)(2)), one count of penetration of the genitals with a foreign object by force or fear (Cal. Penal Code § 289(a)), and one count of attempted oral copulation by force or fear (Cal. Penal Code §§ 288A(c), 664). See Lodged Doc. No. 1.[1] On August 9, 1999, Petitioner was sentenced to serve a total determinate term

---

[1]"Lodged Doc." refers to the documents lodged by Respondent with his response.

1   of twenty years in state prison. <u>Id.</u>

2       Petitioner filed a notice of appeal to the California Court of Appeals, Fifth Appellate District

3   (hereinafter "Fifth DCA"). On October 19, 2001, the Fifth DCA affirmed the judgment. <u>See</u> Lodged

4   Doc. No. 5. Petitioner then filed a petition for review in the California Supreme Court which was

5   summarily denied on January 3, 2002. <u>See</u> Lodged Doc. No. 6.

6       On March 27, 2003,[2] Petitioner filed a petition for writ of habeas corpus in the Kern County

7   Superior Court. <u>See</u> Lodged Doc. No. 7. The petition was denied on May 5, 2003. <u>Id.</u>

8       Petitioner next filed a petition for writ of habeas corpus in the Fifth DCA on November 27,

9   2003.[3] <u>See</u> Lodged Doc. No. 8. The Fifth DCA denied the petition without comment or citation of

10  authority on December 18, 2003. <u>Id.</u>

11      On January 15, 2004,[4] Petitioner filed a petition for writ of habeas corpus in the California

12  Supreme Court. <u>See</u> Lodged Doc. No. 9. The petition was denied without comment on December 15,

13  2004. <u>Id.</u>

14      On April 13, 2004, Petitioner filed the instant federal petition for writ of habeas corpus in this

15  Court. Magistrate Judge Sandra M. Snyder granted Petitioner a stay of the proceedings on April 29,

16  2004, to enable him to return to state court to exhaust his remedies with respect to certain additional

17  claims.

18      On January 19, 2005,[5] Petitioner commenced a second round of collateral review by filing a

19  petition for writ of habeas corpus in the Kern County Superior Court. <u>See</u> Lodged Doc. No. 10. The

20  petition was denied on April 1, 2005, in a reasoned decision. <u>Id.</u>

21  _____

22      [2]Although the petition was filed in the Kern County Superior Court on April 10, 2003, the petition was dated March
    27, 2003.  In <u>Houston v. Lack</u>, the Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date

23  of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk.  <u>Houston v. Lack</u>,
    487 U.S. 266, 276, 108 S.Ct. 2379, 2385 (1988).  The Ninth Circuit has applied the rule to assess the timeliness of federal

24  habeas filings under the AEDPA limitations period.  <u>Huizar v. Carey</u>, 273 F.3d 1220, 1222, (9th Cir. 2001), <i>citing</i> <u>Houston
    v. Lack</u>, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385 (1988). Therefore under the mailbox rule, the Court deems the petition filed

25  on March 27, 2003, the date Petitioner presumably handed his petition to prison authorities for mailing.

26      [3]The petition was actually filed on December 5, 2003. However, under the mailbox rule, the Court will consider the
    petition as filed on November 27, 2003, the date Petitioner signed the petition.

27      [4]Pursuant to the mailbox rule, the Court considers the petition filed on January 15, 2004.

28      [5]Pursuant to the mailbox rule, the Court considers the petition filed on January 19, 2005.

On May 22, 2005,[6] Petitioner filed a petition for writ of habeas corpus in the Fifth DCA. See Lodged Doc. No. 11. The petition was denied on May 26, 2005. Id.

On June 3, 2005, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. See Lodged Doc. No. 12. According to the website maintained by the California judiciary, the petition was denied on April 26, 2006. See Case No. S134608, California Appellate Courts Case Information, available at http://appellatecases.courtinfo.ca.gov/.

On June 15, 2005, Petitioner filed the instant first amended petition in this Court. The amended petition presents the following five grounds for relief: 1) "California Evidence Code § 1108 violates federal constitutional principles of due process of law and the requirement that the state prove beyond a reasonable doubt by allowing prosecution to present evidence of uncharged sex acts to prove accused had a disposition to commit charged acts (5[th] & 14th Amendments)"; 2) "CALJIC Nos. 2.50 & 2.51.1 violate federal due process of law by creating an illogical inference of guilt under the 5[th] & 14th Amendments"; 3) "CALJIC Nos. 2.27 & 10.60 as given to the jury violate federal due process of law by subjecting the victim's trial testimony to a lower scrutiny than that of other witnesses"; 4) "Trial court erred in instructing jury with CALJIC No. 17.41.1 in violation of Petitioner's rights under the 5[th], 6[th] & 14th Amendments of U.S. Const."; and 5) "Petitioner was denied effective assistance of counsel in violation of 6th Amendment of U.S. Const. Prosecutor knowingly used the false evidence of victim, knowing Petitioner was innocent in violation of due process under 14th Amendment of U.S. Const."

On September 27, 2005, Respondent filed an answer to the petition. On January 9, 2006, Petitioner filed a traverse to the answer. Respondent filed a motion for leave to file an amended answer on April 27, 2006, to include the affirmative defense of the statute of limitations in light of a recent Supreme Court decision. The Court granted the unopposed motion on May 17, 2006, and granted Petitioner leave to file a supplemental traverse, which he did on July 11, 2006.

---

[6]The petition is considered filed on May 22, 2005, pursuant to the mailbox rule.

# FACTUAL BACKGROUND[7]

Susan[8] began having serious headaches and other medical problems after a hysterectomy in the late 1980's. She saw various doctors who prescribed Valium and pain medications. Over time, Susan became addicted to the pain medications. She forged prescriptions for the medications and stole other people's prescriptions.

In early 1996, Susan went to the Beverly Medical Clinic for treatment. Petitioner, a licensed physician's assistant, provided medical services to Susan at the clinic. Petitioner initially worked with Susan to wean her from the medication she was taking.

After four to five weeks of treatment, Petitioner gave Susan a shot of Nubain in her buttocks for pain. After he gave her the shot, Petitioner kissed her at the site of the shot, calling it a "boo-boo shot." Petitioner said Nubain was very safe, but it made Susan feel woozy. Susan returned one week later and received another injection of Nubain. The shot rendered Susan almost unconscious. After giving Susan the shot, Petitioner put his hand on Susan's breast. Despite this, Susan felt safe with Petitioner because she felt he was trying to help her. Susan or her ex-boyfriend initially paid for the shots.

Susan continued visiting the clinic approximately twice a week for two years. She received shots of Nubain and other medicine from Petitioner. Each time Susan received a shot, Petitioner would kiss her buttocks where he had given her the shot. Petitioner expressed concern that Susan was receiving too much pain medication, but Susan disagreed and wanted more medication.

Over time, Petitioner began to fondle Susan's breasts and buttocks after giving her shots of Nubain. He also pulled his penis out on three or four occasions and asked Susan to kiss it. Susan would initially refuse, but ultimately complied with the requests.

In the summer of 1998, Petitioner told Susan she would no longer have to pay for the shots. Later that summer, Petitioner told Susan he wanted to take her to a motel and he would bring a shot with him. Susan knew she should not go, but needed the shots of Nubain. Petitioner told Susan to

---

[7]The facts are derived from the factual summary set forth by the Fifth DCA in its opinion of October 19, 2001, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). See Lodged Doc. No. 5.

[8]The victims will be referred to by their first names to protect their privacy, not out of disrespect.

come to the clinic at closing time and told her to wear a pink body suit he had seen before. When Susan arrived at the clinic, Petitioner gave her a Nubain shot. The Nubain made her feel kind of woozy. Susan drove Petitioner to the motel and he gave her another shot of Nubain. The second shot rendered Susan almost unconscious. Susan and Petitioner both took off their clothes. Susan said they should not be doing this and started crying. Petitioner proceeded to have intercourse with her, and she cried the entire time. On the way back to the clinic, Susan told Petitioner she felt like a slut. Petitioner said she was his pretty slut.

Susan returned to the clinic about a week later. She did not want to see Petitioner, but she needed her Nubain shot. Susan felt like she was addicted to Nubain.

On March 11, 1999, Susan went to the clinic at closing time to get a Nubain shot. There were still patients in the clinic waiting to be seen. Susan's head was hurting so she asked if she could lie down on the couch in the lounge. Petitioner came into the lounge and gave Susan a Nubain shot. After he finished with his patients and the receptionist had gone home, Petitioner returned and told Susan he wanted to have intercourse with her. Susan refused. Petitioner became mad and threw Susan on the floor and called her foul names. Petitioner straddled Susan and put his knee on one arm. Petitioner inserted his finger into Susan's vagina and tried to put his penis into her mouth. Susan told him no and tried to get away. Petitioner inserted his penis in Susan's vagina. Susan eventually got up and went to her car half-dressed. She never returned to the clinic.

Susan told her daughter about the rape several days later and then reported the incident to the police.

As a result of the events of March 11, Petitioner was charged with one count of rape by means of force, violence or fear, one count of genital penetration with a foreign object, and one count of attempted oral copulation.

Prior to trial, the People moved to admit evidence that Petitioner committed prior sexual crimes pursuant to Cal. Evid. Code §§ 1101, 1108. The trial court ruled the following testimony regarding Petitioner's prior acts of sexual misconduct was admissible.

**A. Teisha**

Teisha joined the Air Force in 1987. Teisha explained that when she was sick, she was

required to go to the base clinic before she would be excused from duty. In early 1988, Teisha felt ill so she went to the base clinic to be excused from duty. Petitioner was the physician's assistant on duty. Petitioner wrote an excuse for that day and told Teisha if she was still sick to return the next day. When she returned the next day, Petitioner had her get on the examination table and told her to remove her clothes. Petitioner pushed Teisha's bra up her chest and began fondling her breasts. Petitioner complimented her breasts while fondling them. He positioned himself between Teisha's legs and pulled her pants down to expose her vagina and began rubbing her. When Teisha pushed her thighs together, Petitioner again fondled her breasts. Teisha left as soon as she could escape the room.

**B. Linda**

Linda is a foster parent. Linda took a baby placed in her care to the clinic for immunization shots. She was sitting on a chair holding the baby while Lynch gave the baby the shots. After the first shot, Petitioner asked Linda to hold the baby tighter because the baby was yelling and screaming. Immediately after Petitioner gave the baby the second shot, he ran his hand inside Linda's shorts up to her vagina. Linda told Petitioner that if he ever did that again, she would kill him. Petitioner made other comments to Linda which she deemed inappropriate and which carried a sexual overtone.

**C. Cassandra**

Cassandra saw Petitioner in late 1996 for treatment. Petitioner said Cassandra needed a Pap smear. Prior to inserting the instrument in her vagina, Petitioner said Cassandra was too nervous and rubbed her clitoris. When Cassandra returned in approximately a year for the same problem, Petitioner again said she needed a Pap smear and again rubbed her clitoris. Petitioner also examined her breasts. Cassandra described the exam as unlike any other breast exam performed by a physician, and akin to how her husband would touch her.

**D. Cynthia**

Cynthia went to see Petitioner for lower back pain in August 1998. Petitioner examined her back working his way up from her lower back towards her shoulders. When he reached her shoulder blades, he reached around and grabbed her breasts. While he was grabbing her, Petitioner was telling Cynthia that she was pretty and had a good figure. Cynthia immediately got up and left the room.

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

1    As a threshold matter, this Court must "first decide what constitutes 'clearly established

2    Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

3    quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

4    must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

5    of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other words, 'clearly

6    established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

7    the Supreme Court at the time the state court renders its decision." Id.

8    Finally, this Court must consider whether the state court's decision was "contrary to, or

9    involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

10   quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

11   writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

12   question of law or if the state court decides a case differently than [the] Court has on a set of

13   materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

14   "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

15   court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

16   applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

17   "[A] federal court may not issue the writ simply because the court concludes in its

18   independent judgment that the relevant state court decision applied clearly established federal law

19   erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

20   federal habeas court making the "unreasonable application" inquiry should ask whether the state

21   court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

22    Petitioner has the burden of establishing that the decision of the state court is contrary to or

23   involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

24   94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

25   Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

26   decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th

27   Cir.1999).

28   AEDPA requires that we give considerable deference to state court decisions. The state

1  court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

2  interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537

3  U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

4  **III.  Review of Petitioner's Claims**

5  **A. Ground One**

6  Petitioner first contends California Evidence Code § 1108 violates the constitutional

7  principles of due process and the requirement that the state prove guilt beyond a reasonable doubt by

8  permitting the prosecutor to present evidence of uncharged sex offenses to prove Petitioner's

9  propensity to commit the crime.

10  In <u>Estelle v. McGuire</u>, 502 U.S. 62, 75 n. 5 (1991), the United States Supreme Court

11  explicitly "express[ed] no opinion on whether a state law would violate the Due Process Clause if it

12  permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."

13  Therefore, the state court denial of Petitioner's habeas petition challenging California Evidence Code

14  § 1108 was not contrary to, nor did it involve an unreasonable application of, clearly established

15  Supreme Court authority. <u>See</u> <u>Brodit v. Cambra</u>, 350 F.3d 985, 987 (9th Cir.2003), *citing* 28 U.S.C.

16  § 2254(d); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71-72 (2003). Accordingly, the claim should be

17  rejected.

18  **B.  Ground Two**

19  In his next claim for relief, Petitioner argues two instructions given at trial, CALJIC Nos.

20  2.50 and 2.50.01, created an illogical inference of guilt and violated his constitutional rights.

21  CALJIC No. 2.50, as given to the jury in this case, provides:

22  Evidence has been introduced for the purpose of showing that the defendant
committed acts other than that for which he's on trial. Except as you will otherwise be
instructed, this evidence, if believed, may not be considered by you to prove that defendant is

23  a person of bad character or that he has a disposition to commit crimes. It may be considered
by you for the limited purpose of determining if it tends to show:

24  

25  A characteristic method, plan or scheme in the commission of criminal acts similar to
the method, plan or scheme used in the commission of the offense in this case which

26  would further tend to show the existence of the intent which is a necessary element of the
crime charged in two and three, or a clear connection between the other offense

27  and the one of which the defendant is accused so that it may be inferred that if the
defendant committed the other offenses the defendant also committed the crimes

28  charged in this case;

1    The existence of the intent which is a necessary element of the crime charged;

2    A motive for the commission of the crime charged;

3    The defendant had knowledge or possessed the means that might have been useful or necessary for the commission of the crime charged;

4
5    The defendant did not reasonably and in good faith believe that the person with whom he engaged or attempted to engage in a sexual act consented to such conduct;

6    The crime charged is a part of a larger continuing plan or scheme.

7    For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case. You are not permitted to
8    consider such evidence for any other purpose.

9    (RT[9] 592-593.)

10   CALJIC No. 2.50.01, as given to the jury, provides:

11   Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual act on one or more occasions other than the one charged in this case.

12
     "Sexual act" means an act that involves any of the following:

13
14   A. Any contact, without consent, between any part of defendant's body or an object of the genitals or anus of another person;

15   B. Contact, without consent, between the genitals or anus of the defendant and any part of another person's body.

16
17   C. Contact, without consent, between one part of the defendant's body and the part of another person's body and the part of another person's body with the specific intent of sexual arousal.

18
19   If you find the defendant committed a crime - prior sexual act - you may, but are not required, infer that the defendant had a disposition to commit the same or similar type sexual acts. If you find that the defendant had this disposition, you may, but are not required, to infer
20   that he was likely to commit and did commit the act or acts of which he is accused.

21   However, if you find by a preponderance of the evidence that the defendant committed a prior sexual act, that is not sufficient by itself to prove beyond a reasonable
22   doubt that he committed the charged crimes. The weight and significance of the evidence, if any, are for you to decide.

23   (RT 593-594.)

24   As a preliminary matter, the court notes that an allegation that a jury instruction is incorrect

25   under state law does not form a basis for federal habeas corpus relief.  Estelle v.  McGuire, 502 U.S.

26   62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of

27
28
     _____

     [9]"RT" refers to the Reporter's Transcript on Appeal.

1   state law.").  Rather, a habeas court must consider "'whether the ailing instruction by itself so

2   infected the entire trial that the resulting conviction violates due process' ... not merely whether  'the

3   instruction is undesirable, erroneous, or even universally condemned.'" Henderson v. Kibbe, 431

4   U.S. 145, 154 (1977), *quoting* Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396 (1973);

5   California v. Roy, 519 U.S. 2, 5 (1996) (challenge in habeas to the trial court's jury instructions is

6   reviewed under the standard in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) - whether the error

7   had a substantial and injurious effect or influence in determining the jury's verdict). The burden of

8   demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack

9   on the constitutional validity of a state court's judgment is even greater than the showing required to

10  establish plain error on direct appeal." Id.

11      The first step in analyzing whether an instruction that creates an evidentiary inference

12  violates due process by relieving the state of its burden of proving each element of the offense

13  beyond a reasonable doubt is to determine whether the instruction creates a mandatory or permissive

14  inference.  See United States v. Warren, 25 F.3d 89, 897 (9th Cir. 1994).  "A mandatory presumption

15  tells the jury that it *must* presume that an element of the crime has been proven if the government

16  proves certain predicate facts." Id. (emphasis added).   In contrast, a permissive inference instruction

17  "allows, but does require, a jury to infer a specified conclusion if the government proves certain

18  predicate facts."  Id.

19      An instruction that merely creates a permissive inference does not shift the burden of proof,

20  but it nonetheless violates due process unless it can be said with substantial assurance that the

21  inferred fact is "'more likely than not to flow from the proved fact on which is made to depend."

22  County Court of Ulster County v. Allen, 442 U.S. 140, 167 & n. 28 (1979), *quoting* Leary v. United

23  States, 395 U.S. 6, 36 (1969).  Courts determine the constitutionality of a permissive inference

24  instruction on a "case-by-case basis" by reviewing the record evidence to see if the court can say

25  with substantial assurance that the inferred fact flows more probably than not from the facts proven

26  in the particular case.  See Warren, 25 F.3d at 898.  Permissive inference instructions generally are

27  disfavored because they tend to take the focus away from the elements that must be proved.  See

28  Hanna, 87 F.3d at 1037.  However such instructions are less objectionable if other instructions

1  condition, qualify or explain them.  See id. at 1038.

2      This claim was first presented on direct appeal to the Fifth DCA.  On October 19, 2001, the

3  Fifth DCA denied the claim in a reasoned opinion. See Lodged Doc. No. 5. Petitioner then filed a

4  petition for review in the California Supreme Court. See Lodged Doc. No. 6. The petition was

5  summarily denied on January 3, 2002. Id. The California Supreme Court, by its "silent order"

6  denying review of the Fifth DCA's decision, is presumed to have denied the claims presented for the

7  same reasons stated in the opinion of the Fifth DCA.  Ylst v. Nunnemaker, 501 U.S. 797, 803

8  (1991).

9      The appellate court analyzed and rejected the claim as follows:

10          [Petitioner] argues that this instruction created permissible inferences that violated his
   right to due process. [Citation.] A permissible inferences [sic] violates a defendant's right to
11  due process only if there is no rational way the trier could make the connection permitted by
   the inference. [Citation.]

12          [Petitioner] puts forth in his argument that the nonconsensual groping did not allow
13  an inference that [Petitioner] had a propensity to commit rape by force, oral copulation by
   force, or forcible rape by a foreign object.

14          We again disagree. The prior acts evidence allowed the jury to infer that [Petitioner]
15  had a disposition to commit similar acts, and if he had such a disposition he was likely to
   commit the crimes with which he was charged. In both the prior acts and the charged acts,
16  [Petitioner] is imposing his will through the use of force. The only difference is the degree of
   force used against Susan. Petitioner ceased his aggressive conduct when met with resistance
17  with Elston, Clark and Austin. It is logical to infer that [Petitioner's] demonstrated history of
   groping patients, and his abuse of Susan for the three years preceding the rape, resulted in the
18  use of an increased level of force when he met resistance from Susan. There is nothing
   illogical in the inferences permitted by CALJIC No. 2.50.01.
19
20  See Lodged Doc. No. 5.

21      In Gibson v. Ortiz, 387 F.3d 812 (9th Cir.2004), the Ninth Circuit granted habeas relief in a

22  case where the jury was instructed with CALJIC 2.50.01. However, the jury in this case was

23  instructed with a new version of CALJIC 2.50.01, which added the following paragraph:

24          However, if you find by a preponderance of the evidence that the defendant committed a
   prior sexual act, that is not sufficient by itself to prove beyond a reasonable doubt that he committed
25  the charged crimes. The weight and significance of the evidence, if any, are for you to decide.

26  (RT 594.) This additional paragraph cured CALJIC 2.50.01 of constitutional defect. It tells the jury

27  that it may not rest a conviction solely on evidence of prior offenses. Further, it "harmonizes" any

28  contradiction between the preponderance and reasonable doubt standards by alerting the jury that

1  evidence of a prior offense is "not sufficient by itself to prove beyond a reasonable doubt that he

2  committed the charged crimes." See Francis v. Franklin, 471 U.S. 307, 322 (1985) ("Language that

3  merely contradicts and does not explain a constitutionally infirm instruction will not suffice to

4  absolve the infirmity."); Gibson, 387 F.3d at 823. Therefore, the California Court of Appeal's

5  conclusion was not contrary to, or an unreasonable application, of clearly established federal law.

6  The claim should be denied.

7  **C.  Ground Three**

8  Petitioner next argues that CALJIC Nos. 10.60 and 2.27, when read together, improperly

9  suggested that witness testimony need not be subjected to the same careful scrutiny given to other

10  evidence in the case.

11  CALJIC No. 10.60, as given in this case, provided:

12  It is not essential to a conviction of a charge of rape, unlawful sexual intercourse, or
   other sexual activity that the testimony of the witness with whom sexual relations is alleged
13  to have been committed be corroborated by other evidence.

14  (CT[10] 330-331.)

15  CALJIC No. 2.27, as given to the jury, provided:

16  You should give the testimony of a single witness whatever weight you think it
   deserves. Testimony by one witness which you believe concerning any fact is sufficient for
17  the proof of that fact. You should carefully review all the evidence upon which the proof of
   that fact depends.

18  (CT 315-316.)

19  This claim was first presented on direct appeal to the Fifth DCA and rejected on October 19,

20  2001, in a reasoned opinion. See Lodged Doc. No. 5. It was then raised in the petition for review to

21  the California Supreme Court where it summarily denied. See Lodged Doc. No. 6. The California

22  Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is presumed to

23  have denied the claims presented for the same reasons stated in the opinion of the Fifth DCA.  Ylst

24  v. Nunnemaker, 501 U.S. 797, 803 (1991).

25  The appellate court rejected this claim as follows:

26  [Petitioner] concludes his brief by arguing that the combination of CALJIC Nos. 2.27

27

28  ───────────
   [10]"CT" refers to the Clerk's Transcript on Appeal.

and 10.60 created separate standards for evaluating the testimony of Susan from every other witness who testified at trial. [Petitioner] acknowledges that a "similar" argument was rejected by the Supreme Court in *People v. Gammage* (1992) 2 Cal.4th 693. [Petitioner] then asserts that his argument is different than that presented in *Gammage*, yet fails to explain how it is different. The only authority relied on by [Petitioner] is the dissenting opinion in *Gammage*.

Contrary to [Petitioner's] assertion, his argument is identical to that made and rejected in *Gammage*. The trial court did not err in instructing the jury with CALJIC Nos. 2.27 and 10.60.

See Lodged Doc. No. 5.

As noted above, the appellate court flatly rejected Petitioner's claim on the basis of the prior California Supreme Court case of People v. Gammage, 2 Cal.4th 693 (1992). In Gammage, the California Supreme Court held that "it is proper for the trial courts to give CALJIC No. 10.60 in addition to CALJIC No. 2.27 in cases involving sexual offenses."

Therefore, Respondent correctly argues this claim fails to state a federal claim. The instruction was accurate under California law, and Petitioner fails to demonstrate how the instruction infringed on any of his due process rights under the Constitution. This claim should be rejected.

**D.  Ground Four**

In his next claim for relief, Petitioner contends the trial court erred by instructing the jury with CALJIC No. 17.41.1, as follows:

The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

(CT 363.)

As previously stated, to obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991). Even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

This claim was first presented in a petition for writ of habeas corpus to the Fifth DCA on

1   December 5, 2003. <u>See</u> Lodged Doc. No. 8. It was summarily denied on December 18, 2003. <u>Id</u>. It

2   was then raised in the petition for writ of habeas corpus to the California Supreme Court where it

3   was again summarily denied. <u>See</u> Lodged Doc. No. 9. In such a situation when there is no reasoned

4   state court decision, the Court independently reviews the record to determine whether the state court

5   clearly erred in its application of Supreme Court law. <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th

6   Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for

7   its decision, but an independent review of the record is required to determine whether the state court

8   clearly erred in its application of controlling federal law."); <u>see</u> <u>also</u>, <u>Greene v. Lambert</u>, 288 F.3d

9   1081, 1089 (9th Cir.2002).  That is, although the Court independently reviews the record, it still

10   defers to the state court's ultimate decision.

11       In this case, there is nothing in the record to factually support Petitioner's claim. Petitioner

12   does not point to any reports of jurors refusing to deliberate or disregarding the law. He does not

13   argue that a jury deadlock occurred, or that there were holdout jurors. In short, there is no reason to

14   believe the court's use of CALJIC 17.41.1 played any role in the jury's deliberations. There is no

15   evidence that deliberations were improperly chilled, that majority jurors improperly imposed their

16   will on the minority, or that Petitioner was denied his right to a unanimous jury and fair trial.

17   Therefore, Petitioner has failed to demonstrate any prejudice resulting from this instruction.

18       Moreover, Petitioner has failed to establish a federal constitutional violation.  The Supreme

19   Court has not held this instruction to be unconstitutional, and Petitioner does not point to any

20   Supreme Court authority which would bar the giving of this instruction.  The claim is foreclosed by

21   <u>Brewer v. Hall</u>, 378 F.3d 952, 957 (9th Cir.2004), which affirmed a district court's denial of the same

22   claim because there is no clearly established federal law holding that CALJIC 17.41.1 violates an

23   existing constitutional right.

24       Accordingly, the rejection of this claim by the state courts was neither contrary to or an

25   unreasonable application of clearly established Federal law, nor an unreasonable determination of the

26   facts in light of the evidence presented. <u>See</u> 28 U.S.C. § 2254(d). The claim should be denied.

27       **E.  Ground Five**

28       Petitioner alleges he was denied his constitutional right to effective assistance of counsel.

1    Specifically, he argues counsel failed to: 1) act upon exculpatory information in taped conversations

2    between Petitioner and the victim; 2) conduct investigation of a washcloth used by the victim; 3)

3    present expert evidence regarding the victim's bruising; 4) object to the victim's false testimony; 5)

4    object or challenge the various false or incredible statements made by witnesses; and 6) make a

5    record of the prosecutor's statement that she knew Petitioner was innocent.

6          The law governing ineffective assistance of counsel claims is clearly established for the

7    purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151

8    F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance

9    of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687

10   (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

11   counsel's performance was deficient, requiring a showing that counsel made errors so serious that he

12   or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466

13   U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard

14   of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of

15   reasonable professional judgment considering the circumstances. Id. at 688; United States v.

16   Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is

17   highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the

18   wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21

19   F.3d 1446, 1456 (9th Cir.1994).

20         Second, the petitioner must demonstrate that "there is a reasonable probability that, but for

21   counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694.

22   Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial,

23   one whose result is reliable. Id. at 688.  The court must evaluate whether the entire trial was

24   fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78

25   F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

26         A court need not determine whether counsel's performance was deficient before examining

27   the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at

28   697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in

prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. <u>Strickland</u>, 466 U.S. at 692; <u>United States v. Cronic</u>, 466 U.S. 648, 659, and n. 25 (1984).  Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  <u>Weighall v. Middle</u>, 215 F.3d 1058, 1062 (2000).

### 1. Failure to Act on Exculpatory Information or Evidence

Petitioner claims counsel failed to present evidence in the form of taped conversations between Petitioner and the victim wherein Petitioner repeatedly denied he committed the charged offenses. He also claims counsel failed to investigate and present the evidence of the washcloth.

This claim was first presented in a petition for writ of habeas corpus to the Kern County Superior Court on April 10, 2003. <u>See</u> Lodged Doc. No. 7. It was denied in a reasoned opinion on May 5, 2003. <u>Id</u>. It was then raised in petitions to the Fifth DCA and the California Supreme Court and was summarily denied. <u>See</u> Lodged Docs. Nos. 8, 9. The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

In rejecting this claim, the superior court applied the correct standard and determined there was no error or prejudice. First, the court noted that counsel could not be faulted for failing to admit these items into evidence, because "it is not an attorney that admits items in evidence; it is the court." <u>See</u> Lodged Doc. No. 7. Second, there was no prejudice because Petitioner failed to show how either of these items, had they been presented to the jury, would have altered the outcome in any way. <u>Id</u>.

The state court's determination was not unreasonable. Petitioner merely claims the evidence was exculpatory and therefore would have vindicated him. As found by the state court, this claim is wholly unsupported. Even assuming the evidence was exculpatory and counsel erred in failing to attempt to admit it, Petitioner has failed to show any prejudice. Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury." <u>Strickland</u>, 466 U.S. at 695. Here, it is highly unlikely that Petitioner's own statements in the taped conversations

1    with the victim denying responsibility would have had any effect on the outcome. Likewise, the

2    evidence of a washcloth that was allegedly used by one of the witnesses which did not test positive

3    for DNA would not have altered the outcome in light of the overwhelming evidence against him.

4         *2.  Failure to Present Expert Testimony Regarding the Victim's Bruising*

5         Petitioner claims counsel erred by failing to procure an expert to testify to the age of the

6    victim's bruising. Petitioner argues an expert could have concluded the bruises depicted in

7    photographs could not have been the result of the alleged assault.

8         As above, this claim was first presented to the Kern County Superior Court in a habeas

9    petition and denied in a reasoned opinion. In rejecting this claim, the superior court noted the claim

10   was conclusory and speculative. The state court rejection of this claim was not unreasonable.

11   Petitioner offers no evidence in support of his claim. He offers no expert evidence that the bruise

12   coloration was medically significant such that it would have altered the outcome of the trial. Thus, it

13   is completely conclusory. James v. Borg, 24 F.3d 20, 29 (9th Cir.1994); Jones v. Gomez, 66 F.3d

14   199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record

15   or any document do not merit habeas relief); Allard v. Nelson, 423 F.2d 1216, 1217 (9th Cir.1970)

16   (Conclusory allegations in a habeas petition fail to state a claim and do not suffice to shift the burden

17   to the state to answer an order to show cause.).

18        *3.  Failure to Object to False Testimony and Statements*

19        Petitioner next claims defense counsel failed to challenge or object to testimony of the victim

20   and witnesses which he claims were false or incredible. Specifically, he claims the victim had a

21   motive to give false testimony. He argues the victim was seeking damages in a civil lawsuit

22   stemming from this incident. He also notes the victim had a drug problem and did not want

23   Petitioner to "cut her off her drugs" or "turn[] her in for theft and forgery." He also contends the

24   statement prepared by the victim was fabricated with her daughter's help. He further alleges the

25   witnesses lied in their testimony.

26        These claims were raised to the Fifth DCA and the California Supreme Court by petitions for

27   writ of habeas corpus. The petitions were both denied without comment. See Lodged Docs. Nos. 8,

28   9. As noted above, under such circumstances where the state court supplies no reasoned decision, the

federal court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law. <u>Delgado</u>, 223 F.3d at 982 ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."). Although this Court independently reviews the record, it still defers to the state court's ultimate decision.

As to this claim, Petitioner has failed to demonstrate that counsel erred or that any prejudice resulted therefrom. There is nothing in the record below referencing a civil lawsuit having been filed. Moreover, a copy of the complaint submitted by Petitioner in his exhibits shows the complaint was not filed until November 3, 1999, which was almost four months post-conviction. Thus, there was no civil complaint at issue of which counsel could have questioned the victim, and questioning her regarding a potential future civil lawsuit would have accomplished nothing. There was no error and Petitioner cannot demonstrate prejudice.

As to the victim's drug problems, counsel did in fact question the victim on the issue. As Respondent correctly notes, the victim revealed on cross-examination that she had "gotten in trouble with the police for abusing drugs." (RT 172.) She also admitted she had been "in trouble with the police for . . . forging a prescription. (RT 172, 179.) She further admitted she had forged a prescription and lied to get drugs because Petitioner refused to give her more. (RT 173.) With respect to her prepared statement, defense counsel did question the victim about her statement, and the victim acknowledged she prepared it with her daughter's help. (RT 219-221.) Again, Petitioner has failed to show counsel erred.

With respect to Petitioner's claims of fabrication and incredible statements made by other witnesses, these claims are completely conclusory in that Petitioner fails to offer any supporting facts or proof. Moreover, counsel did subject each testifying witness to cross-examination. Petitioner argues counsel should have challenged the witnesses on certain points in their testimony; however, even if counsel had raised these issues, there is no reasonable probability they would have affected the outcome. The evidence against Petitioner was very strong, and the minor points of fact that may have been elicited from further questioning would not have changed anything. Thus, it cannot be said

1  that the state court clearly erred in rejecting the claims.

2      *4.  Failure to Make a Record of Prosecutor's Statement*

3      Finally, Petitioner argues defense counsel failed to make a record of the prosecutor's

4  statement that she believed Petitioner was innocent but was forced to prosecute him because her

5  supervisor refused to drop the charges.

6      As noted by Respondent, there is no evidence whatsoever of such a statement in the record.

7  Petitioner was not a party to the conversation, as it allegedly took place between defense counsel and

8  the prosecutor. Thus, the allegation is entirely conclusory. Jones v. Gomez, 66 F.3d 199, 204-05 (9th

9  Cir.1995). In addition, it is completely irrelevant. Petitioner offers no explanation on how the

10  prosecutor "knew" he was innocent.

11      **F.  Ground Six**

12      In his final claim for relief, Petitioner claims the prosecutor committed misconduct by

13  knowingly prosecuting one she knew to be innocent.

14      A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so

15  infected the trial with unfairness as to make the resulting conviction a denial of due process."

16  Darden v. Wainwright, 477 U.S. 168, 171 (1986), *quoting* Donnelly v. DeChristoforo, 416 U.S. 637,

17  643 (1974); *see* Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995).  To constitute a due process

18  violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of

19  the defendant's right to a fair trial."  Greer v. Miller, 485 U.S. 756, 765 (1987), *quoting* United

20  States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985). Under this standard, a petitioner must show

21  that there is a reasonable probability that the error complained of affected the outcome of the trial -

22  i.e., that absent the alleged impropriety, the verdict probably would have been different.

23      The knowing use of false or perjured testimony against a defendant to obtain a conviction is

24  unconstitutional.  Napue v. Illinois, 360 U.S. 264 (1959). In addition, the prosecution's suppression

25  of evidence favorable to the accused violates due process when the evidence is material to guilt or to

26  punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963).  Evidence is material "only if there is a

27  reasonable probability that, had the evidence been disclosed to the defense, the result of the

28  proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682 (1985).  "[A]

1  constitutional error occurs, and the conviction must be reversed, only if the evidence is material in

2  the sense that its suppression undermines confidence in the outcome of the trial." Id. at 678.

3      This claim was first presented to the California Supreme Court in a petition for writ of habeas

4  corpus which was denied without comment. See Lodged Doc. No. 9. As noted above, under such

5  circumstances, this Court must independently review the record to determine whether the state court

6  clearly erred in its application of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th

7  Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for

8  its decision, but an independent review of the record is required to determine whether the state court

9  clearly erred in its application of controlling federal law.").

10     The claim is completely conclusory and speculative. As previously stated, there is no

11  evidence of such a statement in the record. The only showing Petitioner offers is his own statement

12  that he was told by his defense counsel that the prosecutor believed he was innocent. Petitioner does

13  not offer a statement from his defense counsel attesting to this conversation, nor does he offer any

14  explanation of how the prosecutor "knew" he was innocent. There is no evidence the prosecutor

15  knew certain testimony was false or perjured, or that the prosecutor withheld exculpatory evidence.

16  The allegation is entirely conclusory and should be rejected. Jones v. Gomez, 66 at 204-05.

17  **IV.  Statute of Limitations Defense**

18     In the amended response, Respondent argues the petition is barred by the statute of

19  limitations.

20     On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

21  1996 (hereinafter "AEDPA").  The AEDPA imposes various requirements on all petitions for writ of

22  habeas corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059,

23  2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct.

24  586 (1997).

25     In this case, the petition was filed on April 13, 2004, and therefore, it is subject to the

26  provisions of the AEDPA.  The AEDPA imposes a one-year period of limitation on petitioners

27  seeking to file a federal petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended,

28  § 2244, subdivision (d) reads:

1

        (1) A 1-year period of limitation shall apply to an application for a writ of habeas
corpus by a person in custody pursuant to the judgment of a State court.  The
2       limitation period shall run from the latest of –

3              (A) the date on which the judgment became final by the conclusion of direct
review or the expiration of the time for seeking such review;
4
               (B) the date on which the impediment to filing an application created by
5       State action in violation of the Constitution or laws of the United States is removed, if
the applicant was prevented from filing by such State action;
6
               (C) the date on which the constitutional right asserted was initially recognized by
7       the Supreme Court, if the right has been newly recognized by the Supreme Court and made
retroactively applicable to cases on collateral review; or
8
               (D) the date on which the factual predicate of the claim or claims presented
9       could have been discovered through the exercise of due diligence.

10      (2) The time during which a properly filed application for State post-conviction or
other collateral review with respect to the pertinent judgment or claim is pending shall
11      not be counted toward any period of limitation under this subsection.

12  28 U.S.C. § 2244(d).

13       In most cases, the limitations period begins running on the date that the petitioner's direct

14  review became final.  In this case, the petition for review was denied by the California Supreme

15  Court on January 30, 2002.  Thus, direct review concluded on May 1, 2002, when the ninety (90) day

16  period for seeking review in the United States Supreme Court expired.  Barefoot v. Estelle, 463 U.S.

17  880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999); Smith v. Bowersox, 159 F.3d

18  345, 347 (8th Cir.1998).  Petitioner had one year from May 1, 2002, absent applicable tolling, in

19  which to file his federal petition for writ of habeas corpus.  However, Petitioner delayed filing the

20  instant petition until April 13, 2004, almost one year beyond the due date.  Absent any applicable

21  tolling, the instant petition is barred by the statute of limitations.

22       **A.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)**

23       Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application

24  for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

25  pending shall not be counted toward" the one year limitation period.  28 U.S.C. § 2244(d)(2).  In

26  Carey v. Saffold, the Supreme Court held the statute of limitations is tolled where a petitioner is

27  properly pursuing post-conviction relief, and the period is tolled during the intervals between one

28  state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the

1   state court system. 536 U.S. 214, 215 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir.

2   1999), *cert. denied,* 120 S.Ct. 1846 (2000). Nevertheless, state petitions will only toll the one-year

3   statute of limitations under § 2244(d)(2) if the state court explicitly states that the post-conviction

4   petition was timely or was filed within a reasonable time under state law. Pace v. DiGuglielmo, 544

5   U.S. 408 (2005); Evans v. Chavis, 546 U.S. 189 (2006). Claims denied as untimely or determined by

6   the federal courts to have been untimely in state court will not satisfy the requirements for statutory

7   tolling. Id.

8          As stated above, the statute of limitations began to run on May 1, 2002, and expired on April

9   30, 2003. Petitioner filed his first state habeas petition on March 27, 2003, in the Kern County

10  Superior Court. At that point, 330 days of the limitations period had elapsed. Because the petition

11  was properly filed, the statute of limitations is tolled for the time this petition was pending. The

12  petition was denied on May 5, 2003. Petitioner next filed a state habeas petition in the Fifth DCA on

13  November 27, 2003. With only 35 days remaining, however, the statute of limitations expired on

14  June 10, 2003.

15         Respondent argues the interval between the denial of the first petition and the filing of the

16  second petition should not be tolled because Petitioner did not proceed in the state courts in a timely

17  manner. Respondent's argument is persuasive. Pursuant to the Supreme Court's rulings in Saffold

18  and Chavis, Petitioner is entitled to tolling for the interval between the denial of the first state habeas

19  petition and the filing of the second habeas petition, provided that Petitioner did not unreasonably

20  delay in filing his second petition. Saffold, 536 U.S. at 225; Chavis, 546 U.S. at 197. Here, Petitioner

21  delayed for 206 days until he filed his second habeas petition in state court. The appellate court

22  denied the petition without comment. See Lodged Doc. No. 8. In the absence of "clear direction or

23  explanation" from the state court indicating whether the state petition was timely, the federal court

24  "must itself examine the delay . . . and determine what the state courts would have held in respect to

25  timeliness." Chavis, 546 U.S. at 197. In Chavis, the Supreme Court found a period of six months

26  filing delay to be unreasonable under California law. Id. at 201. The Supreme Court stated, "Six

27  months is far longer than the 'short period[s] of time,' 30 to 60 days, that most States provide for

28  filing an appeal to the state supreme court." Id., *quoting* Saffold, 536 U.S. at 219.  In addition, the

1    Supreme Court provided the following guidance for determining timeliness:

2         [T]he Circuit must keep in mind that, in <u>Saffold</u>, we held that timely filings in California (as
          elsewhere) fell within the federal tolling provision *on the assumption* that California law in
3         this respect did not differ significantly from the laws of other States, i.e., that California's
          'reasonable time' standard would not lead to filing delays substantially longer than those in
4         States with determinate timeliness rules.

5    <u>Chavis</u>, 546 U.S. at 199-200, *citing* <u>Saffold</u>, 536 U.S. at 222-223.

6         Here, Petitioner's delay of 206 days is clearly unreasonable. The delay is far greater than the

7    short period of time of 30 to 60 days provided by most States for filing an appeal. In addition, the

8    California Rules provide that the People have 60 days to appeal the superior court's granting of

9    habeas relief. Cal. Rules of Court § 1506.

10        Petitioner claims the delay was justified because he was transferred to another facility.

11   According to Petitioner, the transfer occurred between August 3, 2003, to August 22, 2003. Even

12   accounting for this time period, however, the delay of over six months is clearly unreasonable.

13   Petitioner further claims the delay was justified because he opted to redraft his petition. This

14   argument is also unpersuasive. Petitioner raised the same claims in the Fifth DCA as he did in the

15   Kern County Superior Court with the exception of one additional claim. Nothing prevented him from

16   filing sooner. No additional investigation or research needed to be completed. He argues he required

17   the additional time merely to rewrite and adequately plead the petition. A delay of over six months,

18   when only 30 or 60 days is normally allotted, is simply excessive.

19        For these reasons, the habeas petition filed in the appellate court was untimely and Petitioner

20   is not entitled to tolling for the interval between the denial of the habeas petition in superior court

21   and the filing of the next habeas petition in the appellate court. Thus, the instant petition was filed

22   well after the limitations period expired and should be dismissed as untimely.

23        **B.  Equitable Tolling**

24        The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that

25   he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

26   way." <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005); <u>see also</u> <u>Irwin v. Department of Veteran</u>

27   <u>Affairs</u>, 498 U.S. 89, 96 (1990); <u>Calderon v. U.S. Dist. Ct. (Kelly)</u>, 163 F.3d 530, 541 (9th Cir. 1998),

28   *citing* <u>Alvarez-Machain v. United States</u>, 107 F.3d 696, 701 (9th Cir. 1996), *cert denied*, 522 U.S.

814 (1997). Petitioner bears the burden of alleging facts that would give rise to tolling. <u>Pace</u>, 544

U.S. at 418; <u>Smith v. Duncan</u>, 297 F.3d 809 (9th Cir.2002); <u>Hinton v. Pac. Enters.</u>, 5 F.3d 391, 395

(9th Cir.1993). Here, the Court finds no reason to equitably toll the limitations period.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

DENIED on the merits and for violating the statute of limitations. It is FURTHER

RECOMMENDED that the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party

may file written objections with the court and serve a copy on all parties.  Such a document should

be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the

objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail)

after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to

28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

Cir. 1991).


IT IS SO ORDERED.

**Dated:    March 13, 2008              _____/s/ Gary S. Austin_____**
UNITED STATES MAGISTRATE JUDGE